UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

NFA CORPORATION,

    Plaintiff,

v.

LEON PLASTICS, INC., et al.,

    Defendants.
                                       /

Case No. 15-12536

Honorable Nancy G. Edmunds

**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S COMPLAINT [16] AND GRANTING IN PART PLAINTIFF'S REQUEST TO FILE A SECOND AMENDED COMPLAINT [21]**

In early October, 2014, Defendant Leon Plastics, Inc. ("Leon") granted a written license to Plaintiff NFA Corporation ("NFA") to utilize certain intellectual property related to interior door panels. Less than a year later, NFA filed this breach of contract/unjust enrichment action alleging that Leon failed to abide by the agreement's exclusivity provision.  While there is no dispute that both parties signed *an* agreement, there is, at a minimum, some question regarding whether Leon assented to a series of unilateral modifications incorporated by NFA.  The viability of NFA's cause of action hinges on this issue.

Currently before the Court is Leon's motion to dismiss the complaint under Federal Rule of Civil Procedure 12(b)(6). (Dkt. 16). Leon's challenge boils down to whether NFA has plausibly alleged that the agreement, in its final form, was supported by mutual assent. In response to Leon's motion, NFA has sought leave to file a second amended complaint.

(Dkt. 21). The Court thus considers this request in conjunction with the motion to dismiss.

For the reasons stated more fully below, the Court GRANTS IN PART AND DENIES IN PART Leon's motion to dismiss, and GRANTS IN PART NFA's request to file a second amended complaint.

## I. FACTS

The facts giving rise to this dispute are relatively straightforward. Defendant Leon previously supplied plastic parts used in interior door panels to Vuteq Canada, Inc. ("Vuteq") (Pltf.'s Mot. Ex. A, Proposed Am. Compl. ¶ 7). The process for manufacturing these particular parts is the subject of a Patent (the "Patent") owned by Leon. At some point, Leon began experiencing "quality and delivery issues meeting its supply obligations to Vuteq and faced various penalties for those issues and obligations." (*Id.* at ¶ 9). Ultimately, the parties agreed to secure a substitute supplier, at which point Plaintiff NFA entered the fray. While NFA expressed interest in assuming Leon's obligations, "it would not consider supplying the certain plastic parts without the protection of an exclusive license agreement in order to eliminate any issues related to the [Patent]". (*Id.* at ¶ 11). In order to assuage NFA's concerns, Leon prepared a license agreement (the "Agreement") purporting to authorize NFA's exclusive use of the Patent.

On October 1, 2014, Leon's senior vice president, David Scheimantel, signed the Agreement and initialed and dated all pages. *See* (Ex. A). The Agreement was then transmitted to Vuteq, who forwarded it to NFA for approval and signature. (*Id.* at ¶ 13). Upon receipt of the Agreement, NFA instituted a number of modifications- chief among them, the early termination provision was changed to give NFA the sole right to end the Agreement early; the original Agreement provided both parties with this right. (Ex. A). After

2:15-cv-12536-NGE-MJH Doc # 29 Filed 05/11/16 Pg 3 of 10 Pg ID 239

finalizing the amended Agreement, NFA's purchasing manger, John Luca, initialed and dated the modified sections and signed the Agreement effective October 3, 2014. (*Id.*). From there, the amended Agreement was signed by John Empson of Vuteq, who also initialed and dated the modified sections. Following Empson's signature, NSF alleges that the Agreement was sent back to Leon for further review. (*Id.* at ¶ 15).

While the complaint is curiously silent on what—if anything—occurred immediately after Leon received the amended Agreement, NSF maintains that Leon "assented to, or otherwise ratified the Agreement, including the changes, and performed under the Agreement . . . ." (*Id.* at ¶16). The complaint details two events in support of this assertion. First, on October 24, 2014—just three weeks after the amended Agreement was signed—Leon purportedly sent NSF "the tooling and raw materials necessary to build and supply the [] plastic parts, as well as work-in-process inventory . . . . " (*Id.*). Several months later, on or about February 17, 2015, NSF maintains that Leon "further acknowledged the enforceability of the Agreement by proposing . . . to [amend] the Agreement from an exclusive license to a non-exclusive license." (*Id.* at ¶ 19) (Ex. B, February 17, 2015 Email). The proposed "non-exclusive license" was styled as an "amendment to the Exclusive Patent Agreement [] dated *October 3, 2014.*" (Ex. B, February 17, 2015 Email) (emphasis added). Leon's proposed amendment was swiftly rejected by NFA . (Proposed Am. Compl. at ¶ 20).

Predictably, NSF's refusal to entertain a non-exclusive license inspired Leon to question the enforceability of the original Agreement. Thereafter, NSF alleges that Leon began "promoting and offering for sale products . . . that [were] subject to the exclusive patent license granted to [NSF]." (*Id.* at ¶ 21). On July 16, 2015, NSF commenced this

3

action seeking, among other things, a full accounting of all revenue attributable to Leon's marketing of the Patent.

## II. LEGAL STANDARD

Under Federal Rule of Civil Procedure 15(a), the "Court should freely give leave to amend where justice so requires." *Id.* The Sixth Circuit has identified several factors to consider in evaluating motions seeking leave to file an amended complaint: "the delay in filing, the lack of notice to the opposing party, bad faith by the moving party, repeated failure to cure deficiencies by previous amendments, undue prejudice to the opposing party, and futility of amendments." *Perkins v. American Elec. Power Fuel Supply, Inc.*, 246 F.3d 593, 605 (6th Cir. 2001). Here, Leon argues that the proposed amendment would be futile because "NFA's changes [to the Agreement] were never accepted . . . and thus NFA's alleged contract was merely a counteroffer." (Leon Resp. Mot. Amend at 3). The Court thus considers Leon's "motion to dismiss in light of [the] proposed amendments to the complaint [to] determine whether the deficiencies in the complaint [] have been cured by the proposed amendments." *Oliverio v. Nextel West Corp.*, 13-10296, 2013 WL 2338706, at *1 (E.D. Mich. 2013) (citing *Begala v. PNC Bank*, 214 F.3d 776, 784 (6th Cir. 2000).

The Sixth Circuit recently noted that under the United States Supreme Court's heightened pleading standard laid out in *Bell Atl. Corp. v. Twombly,* 550 U.S. 544 (2007) and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), "a complaint only survives a motion to dismiss if it contains sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Estate of Barney v. PNC Bank, Nat'l Assoc.,* 714 F.3d 920, 924-25 (6th Cir. 2013) (internal quotations and citations omitted). The court in *Estate of Barney* goes on to state that under *Iqbal*, "[a] claim is plausible when the plaintiff pleads factual

4

content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (internal quotations and citations omitted). Furthermore, "[w]hile the plausibility standard is not akin to a 'probability requirement,' the plausibility standard does ask for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.' " *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)). If the plaintiffs do "not nudge[ ] their claims across the line from conceivable to plausible, their complaint must be dismissed."  *Twombly*, 550 U.S. at 570.  Finally, the Court must always keep in mind that "on a motion to dismiss, courts are not bound to accept as true a legal conclusion couched as a factual allegation." *Id.* at 555.

Moreover, "documents attached to the pleadings become part of the pleadings and may be considered on a motion to dismiss." *Commercial Money Ctr., Inc. v. Ill. Union Ins. Co.*, 508 F.3d 327, 335 (6th Cir.2007) (citing Fed.R.Civ.P. 10(c)). "A court may also consider matters of public record in deciding a motion to dismiss without converting the motion to one for summary judgment." *Id.* at 336. In addition documents not attached to the pleadings may still be considered part of the pleadings when the "document is referred to in the complaint and is central to the plaintiff's claim.*" Greenberg v. Life Ins. Co. of Va.*, 177 F.3d 507, 514 (6th Cir.1999) (internal quotation marks and citations omitted).

### III. ANALYSIS

#### A. Breach of Contract- Counts 1, 3, and 4

Leon argues that Counts 1, 3, and 4 of the proposed amended complaint–breach of contract, accounting, and declaratory relief, respectively–are futile for two reasons: First,

5

they are all premised on the notion that the Agreement is an enforceable contract. But, according to Leon, NFA effectively converted the Agreement into a counteroffer by modifying its terms. Because the amended Agreement was never formally accepted, Leon maintains that it lacks mutual assent. In the alternative, even assuming Leon "implicitly assented by performance" (Leon Resp. Mot. Amend at 10), it maintains that the Agreement is void under the statute of frauds. While the Court finds that NFA has plausibly alleged that Leon assented to the Agreement–and thus may be liable under a theory of quasi-contract–the statute of frauds prevents any recovery under the written Agreement.

Under Michigan law, the essential elements of a valid contract are: (1) parties competent to contract; (2) a proper subject matter; (3) legal consideration; (4) mutuality of agreement, and (5) mutuality of obligation. *Hess v. Cannon Township*, 265 Mich.App. 582, 592, 696 N.W.2d 742 (2005) (quotation and citation omitted). According to Leon, the Agreement–in its final, modified form–lacks mutual assent. "A basic requirement of contract formation is that the parties mutually assent to be bound." *Rood v. General Dynamics Corp.,* 444 Mich. 107, 118, 507 N.W.2d 591 (1993). "A proposal to accept, or an acceptance, upon terms varying from those offered, is a rejection of the offer, and puts an end to the negotiation, unless the party who made the original offer renews it, or assents to the modification suggested." *Harper Building Co. v. Kaplan*, 332 Mich. 651, 656, 52 N.W.2d 536 (1952). "In deciding whether a party has assented to a contract, we follow the objective theory of assent, focusing on how a reasonable person in the position of the promisee would have interpreted the promisor's statements or conduct." *Rood*, 507 N.W.2d at 598.

Here, there is no dispute that NSF modified the Agreement after it was signed by

Leon. *See* (Proposed Amend. Compl. ¶ 14) (NSF "made certain modifications to the Agreement, signed the Agreement on October 3, 2014, and sent the Agreement back to Vuteq."). As both parties acknowledge, "an acceptance [] upon terms varying from those offered [] is a rejection of the offer and puts an end to the negotiation, *unless* the party who made the original offer renews it, or assents to the modification suggested." *Chires v. Cumulus Broad., LLC,* 543 F.Supp.2d 712, 717 (E.D. Mich. 2008) (emphasis added). According to the proposed amended complaint, however, Leon "assented to . . . the [amended] Agreement by . . . sending to [NFA] on or around October 24, 2014, the tooling and raw materials necessary to build and supply the certain plastic parts, as well as work-in-process inventory . . . . " and "further acknowledged the enforceability of the Agreement by proposing amendments to the Agreement . . . . " (Proposed Amend. Compl. ¶¶ 16, 19). In other words, NSF maintains that Leon implicitly assented through performance. And Michigan law recognizes that "the manifestation of mutual assent may be made wholly or partly by . . . acts or conduct." *Tillman v. Macy's, Inc.*, 735 F.3d 453, 460 (6th Cir. 2013) (quoting *Ludowici–Celadon Co. v. McKinley*, 307 Mich. 149, 11 N.W.2d 839, 840 (1943). The Court is thus satisfied that NSF has plausibly alleged that Leon assented to the amended Agreement.

Unfortunately for NSF, however, the inquiry does not end there. Under Michigan's statute of frauds, all contracts that cannot "be performed within 1 year of the making of the agreement" must be "in writing and signed with an authorized signature by the party to be charged with the agreement, contract, or promise." Mich. Comp. Laws. § 566.132(1)(a). Here, the Agreement indicates that the "license term" begins on the effective date–either October 1 or 3, 2014–and ends on the "date of expiration of the Patent . . . ." (Proposed

Amend. Compl. Ex. A). NSF does not appear to dispute Leon's representation that the Patent extends "beyond at least 2023." (Leon Resp. Mot. Amend at 10). Instead, NSF contends that the statute of frauds defense presents "a fact question necessitating a decision on the merits" because "Vuteq also signed off on the modifications to the Exclusive Licence Agreement . . . ." (Reply at 5). But this argument assumes that Vuteq and Leon had an agency relationship- an allegation that does not appear in the proposed amended complaint. Indeed, NSF fails to plead any facts suggesting that Vuteq had apparent authority to make decisions on Leon's behalf. Without more, the Court is unable to assess the plausibility of this claim. Accordingly, the Court must, and does DISMISS Counts 1, 3, and 4 of the amended complaint.

### B. Unjust Enrichment and Promissory Estoppel- Counts 2 and 5

Under Counts 2 and 5 of the proposed amended complaint, NSF asserts two quasi-contract claims: unjust enrichment and promissory estoppel. According to Leon, these claims are likewise futile because "a contract cannot be [implied] when an express contract already addresses the pertinent subject matter." (Leon Resp. Mot. Amend at 11) (citations omitted). But this argument ignores the well-accepted practice of alternative pleading. "Alternatively pleading an express contract and implied contract (whether styled as unjust enrichment or quantum meruit) is allowed when, for instance, there is a dispute between the parties as to whether an express agreement exists." *Llewellyn-Jones v. Metro Prop. Grp.*, LLC, 22 F. Supp. 3d 760, 793 (E.D. Mich. 2014) (citing *Cascade Elec. Co. v. Rice*, 70 Mich.App. 420, 426, 245 N.W.2d 774 (1976). Indeed, a party is not required to "elect to proceed under one theory or the other, but could seek recovery on the basis either of an express [] contract, or an implied contract if the [trier of fact] found that the express []

contract did not exist." *Cascade Elec Co.,* 245 N.W.2d at 777. Here, the Court has already determined that the Agreement–i.e. the express contract–is void under the statute of frauds. Thus, NFA is free to pursue its quasi-contract claims.

Finally, with respect to NFA's promissory estoppel claim, Leon argues that "NFA failed to sufficiently plead an actual, clear, and definite promise." (Leon Resp. Mot. Amend. at 13). But there is no question that this claim is premised on the terms of the Agreement- a clear and definite promise to license certain intellectual property belonging to Leon. Indeed, NFA incorporates the allegations specific to the Agreement in this count and further asserts that "Leon made express or implied promises to [NFA] that [NFA] had an exclusive right to utilize the [Patent] to . . . become a substitute supplier for the certain plastic products previously supplied by [ ] Leon Plastics." (Proposed Amend. Compl. ¶ 46). Nor does it matter, as Leon suggests, that NFA's unjust enrichment claim is based on an unenforceable contract. On the contrary, "if a plaintiff's claim based on an alleged express contract fails because the contract is unenforceable by operation of a statute of frauds, the plaintiff may still pursue a claim for unjust enrichment, which is essentially a claim for breach of an implied in law contract." *MVB Mortgage Corp. v. F.D.I.C.*, No. 2:08-CV-771, 2009 WL 3259413, at *5 (S.D. Ohio Oct. 6, 2009) ("[T]he fact that the alleged express contract was unenforceable due to the statute of frauds does not prevent MVB from prevailing on an unjust enrichment claim."); *see also Ajuba Int'l, L.L.C. v. Saharia*, 871 F.Supp.2d 671 (E.D. Mich. 2012) (finding that plaintiffs, generally, "can plead their claim for unjust enrichment as an alternative to their claims for breach of contract *so long as* questions of fact exist as to the existence of a claim based on contract.") (emphasis added) (citation omitted). For those reasons, the Court finds that NFA has plausibly alleged a claim

for promissory estoppel and unjust enrichment.

## II. CONCLUSION

The Court hereby GRANTS IN PART AND DENIES IN PART Leon's motion to dismiss. (Dkt. 16). More specifically, the Court DISMISSES Counts 1, 3 and 4 of the complaint and finds that any amendment to those claims would be futile. The Court further GRANTS NFA's motion to amend the complaint with respect to Counts 2 and 5 only. (Dkt. 21). NFA is directed to file its second amended complaint within 10 days of this Order.


SO ORDERED.

                                          s/Nancy G. Edmunds
                                          Nancy G. Edmunds
                                          United States District Judge

Dated: May 11, 2016

I hereby certify that a copy of the foregoing document was served upon counsel of record on May 11, 2016, by electronic and/or ordinary mail.

                                          s/Carol J. Bethel
                                          Case Manager